And I'm going to call the third and final case for today, FCOA, thank you, FCOA LLC versus Foremost Title & Escrow Services LLC. We have Adrian Love for the appellant and Robert Stock for the appellee. Miss Love, are you ready to proceed? You're on mute. Yes, Your Honor. All right, please, please go ahead. Good morning, Your Honors. Good morning, Mr. Stock. May it please the court, my name is Adrian Love, counsel for appellant, FCOA LLC. This is a trademark infringement action decided on cross motions for summary judgment. The district court misapplied the law when evaluating three of the seven likelihood of confusion factors. These legal errors are reviewed under the de novo standard. I'll be focusing on the two most important factors as recognized by case law and get to the remaining factor if there's time, but they're also covered extensively in our briefs. Miss Love, before you jump into that, can I ask you a question about the dueling 28-J letters? We now know that the PTO did grant FT&E's trademark application. How does that factor into the likelihood of confusion analysis? Yes, Your Honor. So, Mr. Stock, sorry, the application was allowed, and I know that he just submitted that supplemental evidence. However, the application was only allowed for real estate services. FT&E was not able to get the mark in connection with title insurance services because the trademark office agreed with us that there was a likelihood of confusion between the FT&E mark and the foremost family of marks when used in connection with the title insurance services, which is what we're talking about today. The court can consider the PTO rejection and its analysis of the two marks as persuasive to the FCOA's position, but it shouldn't consider the allowance because we're not discussing FT&E's use of foremost in connection with the title insurance services. In addition to the first factor, the strength of the foremost family of marks, the district court committed two legal errors. First, it improperly considered the existence of trademark registrations and a list of business names as evidence of third-party use. This is the primary error the court made in this case because it resulted in an incorrect conclusion on the first factor. But entirely setting aside the first error, the district court committed a consideration to the commercial strength of the foremost family of marks, which here is also enough by itself to tell you that the mark is strong. Returning to that first error, the district court correctly presumed the foremost marks to be strong due to their incontestable status, but then erred by considering incompetent evidence, those registration and business names, to outweigh that presumption of strength. This is the only reason the marks were deemed weak. A court can consider a third-party use to combat strength, but the true test is whether the third-party marks are actually used in commerce in a similar field that diminishes the public's perception of the plaintiff's mark. That's been the law in the 11th Circuit for a long time and the district court did not apply that correctly. Federal registrations and lists of business names alone are not evidence of third-party use by law. Let me read you a quote from this court's opinion in University of Georgia cited in our initial brief that expresses the rule of law when it comes to third-party use. The proper inquiry is whether the unauthorized third-party uses significantly diminish the public's perception that the mark identifies items connected with the owner of the mark. The district court disregarded this well-established law and FT&E provided no evidence showing actual commercial use of these third-party marks. It makes sense that a list of business names doesn't show actual use because business names don't tell us that the business offers any service or good to the public at all, let alone whether any of them use the term foremost as a source identifier for products or services offered to the public. Even if we assume that the lists represent actual commercial use, the names and registrations provided don't show use within the insurance industry, which is required by law because FCOA is not seeking protection outside of that field and therefore third-party marks in unrelated industries are irrelevant. In fact, the lack of third-party marks within the insurance industry is evidence that demonstrates the strength of the foremost family of marks. So, we do actually have evidence here because there are no third-party marks that use foremost within that insurance industry. If we agree with you that the district court made a legal error on the strength consideration, should we vacate the decision and remand for the district court to reconsider all the factors or should we consider those factors and weigh them ourselves here? Your Honor, I believe that this court can reconsider the factors by applying the proper law within each factor and then reconsidering the factors and weighing them here. And that's what you would ask us to do? Yes, Your Honor. So, because the presumed strength of FCOA's mark was not attacked by competent evidence, the presumption stood unopposed and the district court committed a legal error when it determined that the registration and business lists weakened the foremost family of marks. Thus, this first legal error is enough alone to flip this factor. But the district court also made a second legal error within this factor. That's where the district court failed to consider the commercial strength of the mark. The commercial strength of the foremost family of marks is more than evident based on the undisputed evidence and it establishes that the public recognizes the foremost marks as strong. This alone is also enough to flip the factor in FCOA's favor. These errors led to a decision regarding the strength of the mark that not only is wrong as to factor one, but then later directly affects the evaluation of the other factors, including the similarity of the marks. This flips one of the two most important factors, which alone is enough to reverse the district court's finding for Appley on confusion as a whole. But additionally, under factor two, the similarity of the marks, the court must reevaluate that decision. Here, the district court did not consider the overall commercial impression created by FCOA's use of the foremost family of marks and FT&E's use of the foremost mark. Counsel, let me ask you a question about factor two. How should the words title and escrow at the end of FT&E's mark affect our analysis of the similarity? Your honor, FT&E doesn't always use the term title and escrow in connection with the foremost mark. So they often drop title and escrow. However, even when they use title and escrow, the title and escrow itself is generic. And when you at the fact that FCOA has a family of marks, it would be logical and is supported by case law that consumers would believe that that variation would be attributed to FCOA because FCOA often uses different variations of foremost. They have many marks that are listed in our brief that use the term foremost followed by generic wording. So if you go back to the similarity of the marks as a whole, the district court engaged only in a side-by-side comparison of the parties' logos. This is also a legal error, again, reviewed under the de novo standard. The starting point in analyzing the similarity of the marks is the strength of the mark. Once a mark is considered strong, it's given a greater scope of protection. This is the legal analysis that should have been applied. So basically, if this court finds that the court made a legal error in the first factor, they must then apply the proper analysis to the similarity of marks because that mark was found strong and that strength then affects the scope of protection that that mark is afforded under the similarity marks comparison. In this case, the district court improperly labeled the foremost family of marks weak. This narrowed the scope of protection, and the court found minor differences between the parties' logos to be enough to differentiate the two marks. Because of the error in considering the strength of the mark, the wrong legal analysis was applied here, and this directly affected the factor two must also be re-evaluated. But there's another reason why it should be re-evaluated, and that is because they did not compare the overall commercial impression made by the parties' use of the marks in commerce, not just the logos that they did use. Here, the court must consider that foremost is the dominant theme of both parties' advertising, that the word foremost isn't just a component of the foremost family of marks, it is the mark, that consumers don't encounter the mark side by side in the marketplace, and that foremost is a common characteristic in all of the foremost family of marks. Counsel, can I get you to jump to factor seven, which is the most important factor? Why isn't the lack of evidence regarding actual confusion probative of the conclusion? There was no likelihood of confusion. Yes, Your Honor, so the lack of actual confusion here doesn't help or hurt the plaintiff, and that's held in case law extensively, especially where the products haven't been side by side in the marketplace for long, or the defendant, where in this case is true, where he hasn't had a, there hasn't been a low, there haven't been many sales, so excuse me, the low volume of sales supports a finding that there may not have been that actual confusion yet, and here, FCOA can't wait for actual confusion, as this would amount to a failure under the Lanham Act to properly enforce its trademark rights, thereby weakening its marks, and that's why the courts hold that actual confusion, while if you have it, is very important to the analysis, if you don't have it, it does not necessarily hurt you, especially where there's a low volume of sales, which is the case here, where FT&E made, I think, about 21 sales so far, when the evidence was submitted, and I'll just go back to that. I know my time's running up. The two most important factors here are the strength of the marks and the similarity of the marks. Counsel, your time has expired, but you have reserved four minutes for rebuttal. Mr. Stuck, are you ready to proceed? Yes, I am, Your Honor. Please begin. Please, the court. FCOA is attempting to snatch victory out of the jaws of defeat by speaking about the recent PTO decision. Class 36 of the trademark, which was the only issue that was under consideration, and by the way, FT&E was approved under Class 36, includes insurance underwriting and actuarial services, so the PTO had a question about whether or not FT&E was an insurance underwriter, and when we explained that we were not an insurance underwriter, they approved FT&E under Class 36, which includes financial, monetary, and banking services, insurance services, and real estate affairs. It also includes real estate agency services, real estate management, rental of real estate. Secondly, FCOA is completely inaccurate in explaining the procedural posture that this case comes to court. They made submissions in the court below that there were no credibility issues, that the disputes as to the way the evidence should be applied is something that the court could try as if there was a trial, that there was no need to conduct a trial, that the party submissions alone could serve as a trial, and therefore, the deferential standard of Rule 51 needs to be applied in this case, and that's the clearly erroneous standard, so if the court reviewed the factors and a reasonable person could view the factors one way or another, a deference needs to be given to the trial court, and that's critical in this case because whether or not there's confusion is a fact-intensive inquiry, and there was a plethora of evidence in the court below that there was no evidence of confusion. At the time, FT&E had been in business for only a short period of time, but I can tell you now, five years out, where the company has blossomed and become very successful, we have never had one instance of confusion, and that makes sense because FCOA is non-existent in our marketplace. They don't do business in the coastal areas of Florida. We only do business in the coastal areas of Florida. They don't write title insurance, and in fact, they're statutorily prohibited from writing title insurance. We don't write title insurance either. We offer our clients title insurance as a part of the closing process. We're a service company. We don't offer any insurance with the name Foremost on it. We offer insurance under the old Republic brand, under the Fidelity National brand, and the First American brand of insurance, so no client would ever walk out of our office with any insurance policy with the name Foremost on it. What do you use the name Foremost on very specifically? It's the name of the company, and the company is closely linked with the law firm, Stott, Kahn, and Brigham Law Firm. They're advertised with the same colors, the same commercial impression. One website links to the other website. Foremost, Kyle and Estro is advertised as an attorney-owned title company, so there's a de facto disclaimer right in front of the client. Also, FCOA is completely statutorily prohibited from doing any of the things that the title company does, such as writing contracts, filing deeds. All of these are sort of paralegal services, which a title company can perform, but an insurance company can't perform. You're saying that you don't sell any products that feature the name Foremost on them? No, none. There's no product that we sell that has the name Foremost on it, and that's why we believe that this case is a frivolous case, that Foremost has nothing to do with underwriting insurance. FCOA is not present in our marketplace. The commercial impressions are completely different. While a consumer of insurance products engages in a one-time transaction to buy an insurance policy, in the case of FCOA, through an agent that isn't even required to use the name Foremost in any fashion, in our case, there's a lengthy process that the customer has to go through. This is not one of our factors to consider, but if you're asserting that all the name Foremost is really used for is to name the company and not on any of the products, why do you care so much about retaining that name? Because we've spent a lot of time, money, and effort advertising our company to the trade, and that's another important difference. It's a business-to-business marketing. We deal only with real estate brokers, mortgage bankers, banks, real estate developers. We don't deal with the ordinary consumers. Our company has become recognized and well-known in the marketplace, and we don't want to change the name. It would be the same, Judge Grant, if I asked you, why don't you change your name? That's the name that you have and that you became accustomed to. I don't believe that a large company, just because they're a multi-billion dollar company, could come along and steamroll a nascent business and say, hey, we own the name Foremost, and you can't use that name, and why do you care? We could just take that name away from you. Do you think it's fair, though, given that both companies sell insurance products, to say that no sensate customer could, within the realm of possibility, be expected to confuse the products and services between the two companies? Yes, it is fair, because there's a relationship that occurs with our title company. The customer deals with a paralegal. They come into a law office. They see that we're not an insurance company. We don't sell a Foremost insurance product. They're referred to us by a real estate agent or a mortgage broker as a title company affiliate of a law firm. There are so many commercial contexts which would make it virtually impossible. Anything is possible, but almost impossible for a consumer to believe that they're dealing with an insurance company. And I think that is an entirely fair statement, and the actual facts has borne that out. We've never had one instance where any customer confused us with a Foremost insurance company or any other insurance company, for that matter. And no—Judge Toshlatt, do you have a question? I'm sorry. No customer has ever confused us. And frankly, the customers don't make a purchasing decision when it comes to which title insurance company we underwrite under. What's your response to the argument that the district court should not have considered the unused Foremost trademarks under our precedent? Well, if you look at the Florida International University Board of Trustees versus Florida National Inc., it's a recent precedent out of this circuit. It's reported 830 Fed Third 1242, and the Penn side is 1252. It's a 2016 opinion, but that's exactly what the court considered. They considered the fact that there were eight universities in Florida using the words Florida and university in their names and that that went towards demonstrating that the words Florida and university were weak marks. And the word Foremost has nothing to do with insurance. It has nothing to do with a title company. It's a self-laudatory term, and there's been no evidence provided by FCOA of secondary meaning and association between the consumer and FCOA as an insurance company. And in fact, their own experts said the opposite. Dr. Mamarik said that he didn't test for secondary meaning, and the expert Harper said there is no secondary meaning. She said, customers generally are confused as to the identity of insurance companies. But aren't we bound by our prior decisions that incontestable marks are presumptively strong? Incontestable marks? No, I don't believe that's the case. The Dieter case went into a very long discussion of the fact that the 11th circuit, which is an outlier circuit, held that that presumption could be rebutted. And incontestable status doesn't make a weak mark strong. And clearly under our case law, a descriptive mark is generally inherently weak, unless there's a proof of association between the product and the producer. And that hasn't been demonstrated here at all. There's no evidence in this record that there's any association between the product and the producer. And in the sovereign military hospital to layer case, I'm not going to recite the entire opinion. They said that achieving incontestable status is mainly a matter of longevity of registration. It says almost nothing about marketplace recognition. Incontestable status does not make a weak mark strong. And there are many other cases in the 11th circuit that have recognized this principle. And since the original opinion, the Lanham Act has been amended. And so there's considerable commentary in decisions that the concept of the importance of incontestability has been abrogated by statute. But Dieter is still our case. We may be an outlier, but we're still bound by Dieter. And I agree. But we're also bound by the sovereign military case that says it doesn't make a weak mark strong. And it says nothing about marketplace recognition. And FCOA has shown zero evidence in the record of marketplace recognition. In fact, there's evidence in the record that the FCOA depopulated its commercial lines to the Hartford Group, as well as transferred their automobile lines to one of their other affiliates. So FCOA demonstrated, and they voted with their feet, that they don't even consider their mark strong. So you have two companies that are statutorily prohibited from competing with one another in a marketplace where FCOA simply doesn't conduct business with a small one-office title company. And a large behemoth company, which is part of the reserve group, shouldn't be allowed to bully a small title company out of business. It's a total misuse of the Lanham Act, and it's an abuse of the legal system. So I believe that the decision made below based upon the deferential standard entitled to it must be affirmed. And I see that my time is almost up, and I appreciate the court's time. Thank you very much. Ms. Love, you have four minutes for rebuttal. Thank you, Your Honor. I just want to clarify that apart from Dieter, I think Efteni is talking about the secondary meaning of the mark. But here, because the marks are incontestable, that is conclusive evidence that the mark has secondary meaning. Dieter just takes that a step further and says that that secondary meaning, the validity of the mark, presumes it to be strong. So I just want to clarify that. Additionally, in the FIU case, Mr. Salk did state that, right, that the court found that there were eight other universities actually using the mark Florida University in the names. Here, we don't have that. There were no other marks that were shown to be actually in use in the insurance industry. And there is a lot of evidence that goes to show that this mark is strong and that it is recognized by consumers, including the amount of sales to three million customers, the length of use, which is over 60 years, and the fact that Foremost puts $7 million into advertising every year. Additionally, it's endorsed by AARP. And that also goes to the fact that it reaches over 38 million customers nationwide with its advertisements for Foremost Branded Insurance. I'll also want to hit on the standard of law. Mr. Salk did state that the factual findings or the likelihood of confusion factual findings are evaluated under that clearly erroneous standard. However, here, where we have a misapplication of law within certain factors, that is reviewed by de novo standard. And that is the law of the 11th Circuit, that that standard should apply. When the court has misapplied the law within the factor, this court must correct that misapplication of law and then reevaluate those factors. Additionally, he touched on the geographic overlap of the marks. Here, the marks do geographically overlap. It's not correct. On the record, it is not correct that the marks are not sold or residential insurance alone is one-tenth of the market. For a large insurance market, that is substantial. For example, in comparison, Nationwide only holds about one-twentieth of the market in Florida. And additionally, FCOA's control extends to actual agents in Florida who offer Foremost Branded products, including an increasing number of policies issued to landlords for landlord insurance in the same geographic area as FT&E operates. FT&E also sells properties to landlords, to individual owners that become landlords of those properties who may require insurance and go to Foremost or believe that the Foremost title and escrow is somehow affiliated with Foremost Insurance because the landlord insurance is right now, or at the time the evidence was submitted, they had a three percent market share of landlord evidence, FCOA did. And so that goes to show that that confusion is very likely. The lower court, when discussing the similarity of the products, clarified that the examination is whether the products are of a kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties. So here, what Mr. Stock is saying is, look, FCOA doesn't offer title insurance and we don't offer property and casualty insurance. And that is correct. However, what FT&E does is offers insurance. We're both operating in the insurance industry. Counsel, your time has expired. Oh, I'm sorry. Thank you. But thank you. Thank you both. We have your case under submission and court is now in recess until tomorrow morning. Thank you.